# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLETUS W. GIBBS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>**Acting Commissioner of the Social** )<br>**Security Administration,** )<br>)<br>Defendant. ) | Case No. CIV-14-288-SPS |

## OPINION AND ORDER

The claimant Cletus W. Gibbs requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born October 4, 1964, and was forty-eight years old at the time of the administrative hearing (Tr. 58, 158). He has a high school equivalent education[2] and vocational training in welding, and has worked as a janitor, carwash attendant, stockyard attendant, and warehouse worker (Tr. 220, 88). The claimant alleges that he has been unable to work since September 9, 2009, due to back problems, numbness in his hands and feet, back and neck pain, high blood pressure, an aneurysm, depression, anxiety, and medication side effects (Tr. 66-69, 219).

**Procedural History**

On January 26, 2011, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Luke Liter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 1, 2013 (Tr. 34-44). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of medium work, *i. e.*, he could lift, carry, push, or pull up to twenty-five pounds frequently

---

[2] Claimant's Disability Report indicates he obtained a GED and completed vocational training in "weilding" [sic] in 1990 (Tr. 220). Claimant testified at the administrative hearing that he had a sixth grade education (Tr. 65). He reported to Dr. Schatzman, a consultative examiner, that he completed tenth grade (Tr. 344).

and up to fifty pounds occasionally; sit/stand/walk six hours in an eight-hour workday; but could only occasionally climb ramps, stairs, ladders, ropes, and scaffolding; could only occasionally balance, crouch, crawl, and kneel; and could not operate motor vehicles or work around hazards. The ALJ further found that the claimant could perform simple, routine tasks with no public contact and only superficial contact with coworkers and supervisors (Tr. 38). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work he could perform in the regional and national economies, *e. g.*, food service worker, hand packer, electrical assembler, and circuit board assembler (Tr. 43).

### Review

The claimant contends that the ALJ erred by: (i) failing to properly assess his RFC, (ii) failing to order a psychological consultative examination, (iii) failing to evaluate all of his impairments, (iv) failing to properly analyze whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments, and (v) failing to properly assess his credibility. The undersigned Magistrate Judge finds that the ALJ *did fail* to properly assess his RFC, specifically evidence related to mental impairments, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant's obesity, depression, back impairment, and hypertension were severe impairments and that his status post-repair of ascending dissection and circulatory arrest was nonsevere (Tr. 36). The relevant medical evidence reveals that the claimant initiated mental health treatment at Green Country Behavioral

Health Services in February 2011 which continued through September 2012 (Tr. 323-36, 361-85, 421-97). His mental health related diagnoses included major depressive disorder, recurrent, severe, without psychotic features; alcohol dependence/abuse; and mood disorder with insomnia (Tr. 381, 376, 373, 363, 325, 424, 437, 449, 459, 463, 468, 473, 478, 483, 488, 493). Ashlee Graham, a physician assistant, managed his medications and conducted mental status examinations between June 2011 and September 2012 (Tr. 373-385, 459-97). On August 11, 2011, Ms. Graham noted the claimant's affect was flat but appropriate and his mood was depressed (Tr. 377). She assigned a GAF score of 50/80 and referred the claimant for psychotherapy (Tr. 379). On September 9, 2011, Ms. Graham noted the claimant's affect was appropriate, his mood was depressed, and that he was stable (Tr. 374). She assigned a GAF score of 55 (Tr. 374). The claimant had a total of eleven appointments with Ms. Graham between June 2011 and September 2012 and was assigned GAF scores of either 55 or 60 (Tr. 382-84, 460-62, 464-66, 469-71, 474-76, 479-81, 484-86, 489-91, 494-96). In connection with the claimant's mental health treatment plan, Patricia LaFon-Parmeter, a licensed social worker, and Mylinda Fanj, a licensed drug and alcohol counselor, also assessed the claimant's mental status from February 2011 through September 2012 (Tr. Tr. 323-35, 361-72, 421-33, 434-46).[3] On February 10, 2011, Ms. LaFon-Parmeter indicated the claimant had a good prognosis and assigned a GAF score of 45 (Tr. 325, 329). On August 16, 2011, and on February 28, 2012, Ms. LaFon-Parmeter noted the claimant was making progress and that he reported

---

[3] Ms. LaFon-Parmeter signed the claimant's February and August 2011 Service Plans as Patricia LaFon and signed his February 2012 Service Plan as Patricia Parmeter (Tr. 335, 372, 446).

his medications were effective; she assigned GAF scores of 47 and 48, respectively (Tr. 363, 367, 437). On September 12, 2012, Ms. Fanj assigned a GAF score of 50 (Tr. 424).

State reviewing physician Dr. Ron Cummings reviewed the claimant's records on May 19, 2011 (Tr. 407-20, 340-43). He concluded on the Psychiatric Review Technique Form (PRT) that the claimant had moderate limitations in maintaining social functioning and mild limitations in activities of daily living and in maintaining concentration, persistence, or pace; he noted the claimant's intake at Green Country Behavioral Health but not the GAF score (Tr. 417-419). On the Mental RFC Assessment, Dr. Cummings opined that the claimant was moderately limited in both his ability to understand and remember detailed instructions and in his ability to carry out detailed instructions and was markedly limited in his ability to interact appropriately with the general public (Tr. 340-41). Dr. Cummings concluded that the claimant could maintain concentration, persistence, and pace for a normal work day and week; could understand and carry out simple and some complex work tasks; could recognize and avoid common work hazards; could adapt to changes in the work setting and make decisions regarding work tasks; could work with coworkers and supervisors on a superficial basis; and could not work with the general public (Tr. 342).

Dr. Ronald Schatzman conducted a physical consultative examination on June 11, 2011 (Tr. 344-50). He assessed the claimant with chronic back pain by history, depression by history, obesity, and hypertension (Tr. 346). Although Dr. Schatzman did not perform a mental examination of the claimant, he noted that the claimant had a strange affect and that his history was difficult to follow because he was only about 50%

intelligible (Tr. 346). In response to an inquiry from the State of Oklahoma Disability Determination Division, Dr. Schatzman later clarified he thought the claimant was 50% intelligible because of "perceived mental problems such as rambling, tangential [sic] and/or difficulties concentrating and thinking" (Tr. 352).

On December 12, 2011, state reviewing physician Dr. Diane Hyde completed both a PRT form and a Mental RFC Assessment (Tr. 388-405). She found that the claimant had mild limitations in activities of daily living and moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace (Tr. 398). Dr. Hyde opined that the claimant was moderately limited in his ability to understand and remember detailed instructions and in his ability to carry out detailed instructions and was markedly limited in his ability to interact appropriately with the general public (Tr. 402-03). She concluded that the claimant could perform simple and some complex tasks with routine supervision; could relate to co-workers and supervisors for superficial work-related purposes; could adapt to change for work-related purposes; and should avoid contact with the general public (Tr. 404).

At the administrative hearing, the claimant testified that he was unable to work because of pain in his back and neck, numbness on his left side, high blood pressure, an aneurysm, depression, anxiety, and medication side effects (Tr. 66-69). He stated his depression and anxiety began after his wife passed away in 2000 (Tr. 85). He further stated that because of his depression and anxiety, he is unable to trust people, does not like being around people, and has one or two days per month where he does not get out of bed (Tr. 85-86). Because of memory and/or concentration problems, he testified that he

needed a calendar for reminders and needed to take care of tasks immediately or he would forget them later on (Tr. 86).

In his written opinion, the ALJ discussed the claimant's hearing testimony and function report, mentioned some of the third party reports, and summarized the medical evidence. In discussing the opinion evidence, the ALJ thoroughly summarized Dr. Schatzman's report, but failed to provide any analysis or assign any weight with regard to his assessment. The ALJ also summarized the state reviewing physicians' opinions and assigned each of them moderate weight, finding that the claimant was limited by mental impairments more than the state physicians believed (Tr. 42).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350

F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a summary of Dr. Schatzman's report, but did not conduct any analysis of his findings and further failed to disclose what weight he afforded the opinion. This was particularly important because the ALJ appears to have adopted Dr. Schatzman's findings regarding the claimant's physical impairments; however, the ALJ and the state reviewing physicians ignored Dr. Schatzman's observations concerning the claimant's mental health. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Schatzman's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of Dr. Schatzman's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC

assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

The ALJ also engaged in improper picking and choosing among the various GAF scores assigned to the claimant. In his written opinion, the ALJ noted the claimant's GAF scores above 50; however, he did not analyze or mention the claimant's GAF scores of 50 or below (Tr. 325, 363, 424, 437). "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947. Instead of simply ignoring the claimant's sub-50 GAF scores, the ALJ should have determined whether such low GAF scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job [but] assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."). *See also Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence.").

Because the ALJ failed to analyze probative evidence potentially inconsistent with his RFC determination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If on remand there is any adjustment to the

claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 29th day of September, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**